UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JENNIFER THOMAS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 3:10-1158 |
| | ) Judge Sharp |
| **STARBUCKS CORPORATION,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM

After Plaintiff Jennifer Thomas lost her job as an Assistant Store Manager ("ASM") at a Starbucks store, she filed suit in this Court alleging a hostile work environment in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and retaliation in violation of that statute and the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.* Defendant Starbucks Corporation ("Starbucks") has filed a Motion for Summary Judgment (Docket No. 26) with respect to all of Plaintiff's claims, and that Motion has been fully briefed by the parties (Docket Nos. 27, 29 & 32). For the following reasons, the Motion will be granted with respect to Plaintiff's hostile work environment claim, but denied with respect to her retaliation claims.

## I. FACTUAL BACKGROUND

The parties generally agree on the basic relevant facts underlying this litiation. Those facts are as follows:

Plaintiff, an African American, began working at Starbucks as an ASM trainee in May 2005, and became an ASM after completing an initial management training program. The responsibilities of ASMs include supervising, directing, and communicating with employees, who are referred to at Starbucks as "partners."

1

Plaintiff began working at the 21st Avenue Store in Nashville, Tennessee, and worked there for approximately a year. She was transferred to the West End store, which was a lower volume store, so that she could further develop her skills as an ASM. In October 2007, Plaintiff was transferred to the Nashboro Village store, and worked there until her separation in September 2009.

At the Nashboro Village store, Plaintiff reported to the Store Manager, Christy Raines ("Raines"), who in turn reported to District Manager Lisa Garramone ("Garramone"), and Regional Director June Nwabara ("Nwabara"). Raines and Garramone are Caucasian, and Nwabara is African-American.

Plaintiff first received a corrective action on February 18, 2008, after Garramone and Nwabara made an unscheduled visit to the Nashboro Village Store. Among other things, the visit revealed dirty dishes, violations of the dress code, and failure to use the duty roster. As the Store Manager, Raines also received a corrective action for the store's appearance on that day, although she was not at the store.

Plaintiff next received a corrective action on June 3, 2008, for failing to call in the daily financial report of the store's performance to the district manager. Plaintiff had been given a verbal warning for the same failure some five days earlier.

Plaintiff received another corrective action on September 5, 2008. This was because she failed to complete the duty roster on her shift allocating the responsibilities to the partners at the store.

On October 22 and November 11, 2008, Plaintiff was responsible for opening the Nashboro Village store. She was late both days, and received a corrective action as a result.

On January 16, 2009, Plaintiff switched shifts with a barista, leaving the store without a scheduled manager for an hour and a half. The following day, Plaintiff worked a "split shift,"

2

showed up two hours late in the morning, and, in an effort to make up the time, worked two and a half hours past closing, in violation of Starbucks' policy. For these events, Plaintiff received a corrective action which was characterized as a final written warning on January 19, 2009.

On January 30, 2009, Plaintiff was involved in a "heated" conversation with another partner, whom she tried to give a written corrective action. Instead of that employee receiving a corrective action, Plaintiff herself received one on February 9, 2009, because issuing a corrective action was outside the scope of her authority as an ASM.

On February 12, 2009, Plaintiff filed a Charge of Discrimination with the Tennessee Human Rights Commission ("THRC"), alleging retaliation and discrimination based on race. In the body of the charge, Plaintiff stated that, in December 2008, she met with Raines and Garramone, and was informed that several employees had complained about her management style. Plaintiff told Raines and Garramone she believed the complaints were race-based. Shortly thereafter, Plaintiff met with Garramone and Nwabara wherein she expressed concerns that "Starbucks was trying to push me out and replace me with a white male, Ryan Herbst." (Docket No. 29-6).

Plaintiff also stated in the Charge that she had received written warnings on January 19 and February 9, 2009. While the warnings were allegedly based upon Plaintiff's attendance and her failure to communicate effectively with partners, she believed they were issued based on her race and in retaliation for bringing her race discrimination allegations to the attention of her superiors.

On May 23, 2009, Plaintiff received a corrective action because she was responsible for opening the store that morning, but arrived seventy-two minutes late to work. This caused the store to open forty-five minutes late.

3

Case 3:10-cv-01158  Document 33  Filed 05/24/12  Page 3 of 11 PageID #: 727

In March 2009, Plaintiff received her mid-year performance review by Garramone.[1] Garramone evaluated Plaintiff based on her own observations, and feedback from Raines. Plaintiff received a "must improve" score on her performance evaluation. Under Starbucks' policy, management employees who receive a "must improve" score on their performance evaluations are placed on a performance improvement plan ("PIP"), with the stated goal being to give those employees the opportunity to improve, change their behavior, and become successful.

After preparing the PIP, Garramone met with Plaintiff to discuss the performance evaluation, to review the PIP, and to explain the areas where she needed to improve. Areas requiring improvement included working well with others, "leading courageously," and achieving results. Garramone also set up certain "check-in dates" to review Plaintiff's progress, which would occur at 30, 60, and 90 days after the PIP was implemented. Plaintiff was also subjected to unannounced visits by Garramone, so she could personally observe Plaintiff's performance.

Garramone met with Plaintiff for her 30 day PIP status review on May 27, 2009, and told her that her poor management and decision-making continued, and that her performance remained at a "must improve" level. According to Garramone, Plaintiff failed to complete the daily roster or to conduct Values Walks, disregarded management communications, and failed to report cash discrepancies. Additionally, there was unsatisfactory store performance during a ten day period that she was responsible for the store while Raines was on vacation.

Garramone met with Plaintiff for her 60 day PIP status review on August 23, 2009. Again, Plaintiff was performing at a "must improve" level because she allegedly struggled with time

---

[1] Starbucks partners are provided mid-year performance reviews in March, and annual performance reviews in September. For ASMs, the performance review is completed by the District Manager. Various categories are assessed, including customer service, and communication with, and development of relationships with, store partners. The performance review also recognizes individual and team accomplishments.

4

management, violated company standards for managing employees, and failed to provide sufficient detail in her Values Walks.

Plaintiff exhibited some improvement in her performance during the period prior to the 90 day PIP status review. Nevertheless, Garramone determined that "her overall performance is not meeting the expectations of an assistant store manager and she did not exhibit significant progressive improvement throughout the plan." (Docket No. 27-2 at 72).

Based on her own observations and the information provided by the Store Manager, Garramone, with the consultation and approval of Nwabara and Partner Resources Manager Angela Bailey ("Bailey"), made the decision to terminate Plaintiff's employment because she had not shown sustained improvement in her performance through the course of the PIP, and because her overall performance was below the "meets expectations" level. Plaintiff was terminated from Starbucks employment on September 27, 2009.

## II. LEGAL DISCUSSION

The standards governing motions for summary judgment are well-known and need not be repeated in detail. A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox County School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

As noted at the outset, Plaintiff brings claims for a hostile work environment and retaliation.

5

Turning first to her hostile work environment claim, Title VII prohibits discrimination based on gender in relation to the "terms, conditions or privileges of employment," 42 U.S.C. § 2000e-2(a)(1), and that phrase includes "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). To make out such a claim, Plaintiff must "show that (1) she is a member of a protected class; (2) she was subjected to unwelcomed racial harassment; (3) the harassment was race based; (4) the harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and (5) employer liability." Clay v. United Parcel Serv., 501 F.3d 695, 706 (6th Cir. 2007).

Plaintiff's hostile work environment claim fails for any number of reasons, not the least of which is that she points to no evidence suggesting she was subjected to *racially* based harassment. Further, Plaintiff makes no showing that her "workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," Harris, 510 U.S. 17, 21 (1993), either subjectively, or from a reasonable person's point of view. See, Armstrong v. Whirlpool Corp., 363 Fed. Appx. 317, 324 (6th Cir. 2010) ("the question of whether a plaintiff suffered a hostile work environment involves both an objective component that asks whether a reasonable person would find the environment hostile and abusive, and a subjective component that asks whether the individual plaintiff subjectively viewed that environment as abusive"). In this regard, Plaintiff has not shown that there was racially discriminatory conduct that was frequent and severe, that she was physically threatened or humiliated, or that any allegedly harassing conduct interfered with her work performance. Clark v. United Parcel Serv., Inc., 400 F.3d 341, 352 (6th Cir. 2005) (quoting, Harris, 510 U.S. at 23).

6

This Court's reading of the record is confirmed by Plaintiff's own concessions in her response brief where she does not even argue whether the evidence is sufficient to support a hostile work environment claim. Plaintiff concedes that "she has no proof" that Defendant mistreated her based on race, acknowledges that "[t]he only time Plaintiff even mentions race in her Complaint is to note that her original EEOC complaint alleged raced discrimination," and admits "that she does not have sufficient evidence of race discrimination to carry her burden of proof in a Title VII action." (Docket No. 29-1 at 3-4). In any event, the Court can "properly decline[] to consider the merits of this claim" when Plaintiff "fails to address it in . . . h[er] response to the summary judgment motion[.]" Kicks v. Concorde Career College, 449 Fed. Appx. 484, 487 (6th Cir. 2011).

In sum, Plaintiff has failed to set forth sufficient evidence to present a jury question on the issue of whether she was subjected to racial harassment. The same, however, cannot be said about Plaintiff's retaliation claims under Title VII and the THRA.

Where, as here, there is no direct evidence, retaliation claims are reviewed under the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) framework. Abbott v. Crown Motor Co., 348 F.3d 537, 542 (6th Cir. 2003).[2] "To make a prima facie showing of retaliation, plaintiff must show that (1) he engaged in protected activity, (2) the activity was known to the defendant, (3) plaintiff was subjected to materially adverse action, and (4) there was a causal connection between the protected activity and the adverse action." Harris v. Metro. Gov't of Nashville & Davidson County, 594 F.3d 476, 485 (6th Cir. 2010). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one that is easily met." Nguyen v. City of Cleveland, 229 F.3d

---

[2] Claims for retaliation under the Title VII and the THRA are analyzed similarly. See, Bobo v. United Parcel Serv., Inc., 665 F.3d 741, 757-58 (6th Cir. 2012); T.C.A. § 4-21-311(e).

7

559, 563 (6th Cir. 2000).

Once a plaintiff establishes a prima facie case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for its action. Abbott, 348 F.3d at 542. "If the defendant meets this burden, the plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was a mere pretext for discrimination by establishing that the proffered reason: 1) has no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action." Id.

In this case, there is no dispute that Plaintiff has established the first three elements of a *prima facie* case. She engaged in a protected activity by complaining about racial discrimination and filing a THRC charge, Starbucks was aware of that protected activity, and Plaintiff subsequently suffered the ultimate adverse employment action – termination. What is disputed is whether Starbucks had a legitimate reason for discharging Plaintiff and, if so, whether that reason was but a pretext for discrimination.

In support of its Motion, Starbucks observes that, in February 2008, a year before Plaintiff filed her charge of discrimination with the THRC, Plaintiff received a corrective action, and she would be issued a total of six separate corrective actions, including a final written warning, within the next year. Starbucks goes on to argue: "Not surprisingly, her performance, already at the lowest possible level to 'meet expectations,' deteriorated to a 'must improve' rating on her evaluation in March 2009, which under Starbucks' policy required her to be placed on a performance improvement plan[.]" (Docket No. 30-1 at 1). Starbucks further contends that "Plaintiff's performance action plan came automatically based on her regular mid-year performance, and notes that "Starbucks was not required to suspend the ongoing disciplinary process merely because Plaintiff filed a charge of discrimination." (Docket No. 27 at 14). See, Hervey v. County of

8

Koochiching, 527 F.3d 711, 723 (8th Cir. 2008) (citation omitted) ("Evidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity").

In response, Plaintiff does not claim that she was a perfect employee, but does argue that the timing of her dismissal, preceded by heightened scrutiny, raises the inference that the dismissal was because she filed a charge of discrimination.

"Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008). "But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality." Id.

Starbucks correctly argues that the seventh month gap between Plaintiff's filing of a THRC charge and her termination is insufficient, by itself, to establish a causal connection between the two events. See, Clay v. United Parcel Serv., Inc., 501 F.3d 695, 718 (6th Cir. 2007) (without more, six months between protected activity and adverse action too attenuated to show causation). However, even when temporal proximity is not enough to warrant the inference that a discharge was for a retaliatory reason, proximity coupled with other evidence can suffice.

For example, "the combination of close temporal proximity between an employer's heightened scrutiny and that plaintiffs' filing of an EEOC charge" can be sufficient, Upshaw v. Ford Motor Co., 576 F.3d 576, 588 (6th Cir. 2009), and allegations of heightened scrutiny can be based upon the plaintiff's deposition testimony. Hamilton v. General Elec. Co., 556 F.3d 428, 435 (6th Cir.

9

2009). Similarly, a causal relationship can be "established by demonstrating that the adverse action was taken shortly after plaintiff filed the complaint and by showing that [s]he was treated differently from other employees." Moore v. Kuka Welding Sys., 171 F.3d 1073, 1080 (6th Cir. 1999). Moreover, even where the employer posits a legitimate reason for the challenged actions, the validity of that reason can be cast into doubt because "when an 'employer . . . waits for a legal, legitimate reason to fortuitously materialize, and then uses it to cover up his true, long-standing motivations for firing the employee,' the employer's actions constitute 'the very definition of pretext.'" Hamilton, 556 F.3d at 436 (quoting, Jones v. Potter, 488 F.3d 397, 408 (6th Cir. 2007)).

In this case, Plaintiff has presented sufficient evidence which calls into question the veracity of the reasons given for her termination. Among other things, Plaintiff points to the following:

→ There was only a seven month period between of her THRC charge and her termination;

→ After learning of the THRC charge, Raines complained to Plaintiff that she did not give Starbucks sufficient time to respond to the internal complaint before filing the charge;

→ After the filing of the charge, Garramone stripped Plaintiff of several responsibilities, including ordering inventory and the ability to discipline;

→ When Plaintiff told Bailey that she had filed a charge of discrimination, Bailey responded, "So there is a charge out there and you're still employed by Starbucks?" and, when Plaintiff responded in the affirmative, Bailey stated, "Well, we're going to have to handle this differently" and then ended her conversation with Plaintiff.

→ Plaintiff was placed on a PIP within two and half months after she filed her THRC charge;

→ Although Plaintiff was allegedly a poor employee for nearly a year prior to her termination, Plaintiff was found to have met performance expectations in an October 2008 performance evaluation, and this was just two months before she complained internally about alleged racial discrimination, and only four months before the formal charge with the EEOC; and

→ Even though PIP plans generally provide a 90 day window for improvement,

10

Plaintiff was terminated before the 90 day period had expired.

(Docket No. 29-1 at 6-11).

Starbucks presents evidence aplenty painting a portrait of a poorly performing partner. But, there is also evidence from which a jury could conclude that there was a causal link between Plaintiff's protected activity and her termination, and that Starbucks' explanation is just a pretext for retaliation. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" <u>Reeves v. Sanderson Plumbing Prod.'s Inc.</u>, 530 U.S. 133, 150 (2000) (citation omitted). Ultimately, it will be for the jury to determine why Plaintiff was terminated when she was.

### III. <u>CONCLUSION</u>

For the above reasons, Starbucks' Motion for Summary Judgment will be granted with respect to Plaintiff's hostile work environment claim, but denied with respect to her retaliation claims.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE